*14-867-cv*
*Galper v. JP Morgan Chase Bank, N.A.*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

————————

August Term, 2014

(Argued: February 3, 2015    Decided: September 30, 2015)

Docket No. 14-0867-cv

————————

YELENA GALPER,

*Plaintiff-Appellant*,

–v.–

JP MORGAN CHASE BANK, N.A.,

*Defendant-Appellee*.

————————

B e f o r e :

HALL, LOHIER, *Circuit Judges*, and MEYER, *District Judge*.[*]

Plaintiff-appellant Yelena Galper appeals from a judgment of the United States District Court for the Southern District of New York (Sweet, J.), dismissing her New York state law identity theft claims against defendant-appellee JP Morgan Chase Bank, N.A. ("Chase"). In its ruling on Chase's motion to dismiss, the district court held that Galper's identity theft claims pursuant to New York's Fair Credit Reporting Act, N.Y. Gen. Bus. L. §§ 380-l and 380-s, are preempted by

———————————

[*] The Honorable Jeffrey Alker Meyer, of the United States District Court for the District of Connecticut, sitting by designation.

a provision of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. We conclude that, when viewed in the light most favorable to plaintiff, the operative complaint may be read to advance a claim based on Chase's vicarious liability for identity theft allegedly perpetrated by its employees, as distinct from any erroneous or otherwise wrongful actions by Chase in furnishing information to consumer reporting agencies. Such a claim of identity theft is not "with respect to" the responsibilities of persons who furnish information to consumer reporting agencies, and is therefore not preempted by 15 U.S.C. § 1681t(b)(1)(F).

VACATED AND REMANDED.

––––––––––––––

ERIC M. CREIZMAN, Creizman PLLC, New York, New York, *for Plaintiff-Appellant*.

ANDREA LIKWORNIK WEISS (Alan H. Scheiner, *on the brief*), Levi Lubarsky & Feigenbaum LLP, New York, New York, *for Defendant-Appellee*.

––––––––––––––

JEFFREY ALKER MEYER, *District Judge*:

This is a case about identity theft, and it requires us to consider the relationship between a New York state law providing remedies for victims of identity theft and the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (FCRA). An identity theft occurs when someone misappropriates another person's name or other personal information in order to engage in fraud or other crimes. Predictably enough, this criminal activity will often result in adverse alerts to credit reporting agencies and significant damage to the victim's credit

2

worthiness. Like many other states, New York has created by statute a private civil cause of action for victims of this crime to recover damages from identity thieves.[1] *See* N.Y. Gen. Bus. L. §§ 380-l, 380-s.

Plaintiff Yelena Galper alleges that she was the victim of an identity theft scheme perpetrated by employees of defendant JP Morgan Chase Bank, N.A. ("Chase"), and she seeks to hold Chase liable for this identity theft under the New York Fair Credit Reporting Act. This state law creates a cause of action for a victim to sue any person who engages in identity theft if, in turn, the theft results in the transmission of certain information about the consumer to a consumer reporting agency (*i.e.*, a credit bureau). *See id.*

The question here is whether Galper's lawsuit is preempted by the federal FCRA, which preempts state law claims for identity theft if they are "with respect to" subject matter regulated by 15 U.S.C. § 1681s-2, a statute that "relat[es] to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). In its ruling on Chase's motion to dismiss, the district court concluded that Galper's claims under the New York law are preempted by the FCRA.

---

[1] For examples of other state laws allowing victims of identity theft to sue an identity thief for damages, *see* Ala. Code § 13A-8-199 (2015); Conn. Gen. Stat. § 52-571h (2015); Ga. Code Ann. § 16-9-130 (West 2015); Iowa Code § 714.16B (2015); Mo. Rev. Stat. § 570.223 (2015); N.C. Gen. Stat. § 1-539.2C (West 2015); 42 Pa. Cons. Stat. § 8315 (2015); Tenn. Code Ann. § 47-18-2104 (West 2015); Wash. Rev. Code 9.35.020(7) (2015).

We conclude that the FCRA does not preempt all of Galper's claims under the New York law. Viewed in the light most favorable to plaintiff, the operative complaint advances claims of identity theft and aiding and abetting identity theft based on Chase's vicarious liability for its employees' theft of Galper's identity, as distinct from any erroneous or otherwise wrongful actions by Chase in furnishing information to consumer reporting agencies. Such claims of identity theft are not "with respect to" the responsibilities of persons who furnish information to consumer reporting agencies and are therefore not preempted by the FCRA. Because Galper's complaint plausibly raises state law claims that are not preempted by federal law, we vacate the judgment of the district court and remand for further proceedings consistent with this decision.

## BACKGROUND

Galper's amended complaint alleges the following facts, which we accept as true for purposes of reviewing the district court's grant of Chase's motion to dismiss. For about three years, various Chase bank employees allegedly aided and abetted the money laundering activities of certain persons who were engaged in a scheme to defraud the Medicare program. In return for cash bribes and other gratuities, these Chase employees assisted the money launderers in the

4

fraudulent use of Galper's name as a signatory for Chase accounts set up in the name of phony corporations. These accounts were used to deposit and pay out proceeds of the Medicare fraud scheme. With the approval and knowledge of complicit Chase employees, the members of the money laundering scheme also operated and controlled Galper's previously dormant personal checking account, and they used an ATM card associated with that account. The Chase employees falsified Chase's records to enable the members of the money laundering scheme to make withdrawals from these accounts in Galper's name, including for extravagant luxury purchases. Galper was not aware of any of these transactions or money laundering activities.

This fraudulent activity benefitted Chase because it increased Chase's business. Indeed, Galper alleges in her complaint that the Chase employees actually "acted within the scope of their employment and for the benefit and profit of Chase" when they "facilitate[d] the unlawful use of [her] identifying information." Compl. ¶ 5.

During the course of the conspiracy, the members of the money laundering scheme frequently overdrew the various fraudulent accounts in Galper's name, causing many bounced checks. The Government eventually discovered what was

5

happening, and the fraudulent accounts were closed. Galper told investigators that she did not know anything about the activity, but she was arrested, indicted, and tried on charges of money laundering conspiracy. Eventually, after a seven-week trial, a jury acquitted Galper of all charges.

Galper sued Chase in New York state court, asserting claims for identity theft and aiding and abetting identity theft, both in violation of New York's Fair Credit Reporting Act, N.Y. Gen. Bus. L. §§ 380-l and 380-s. The New York law generally prohibits actual or attempted identity theft, defined in relevant part to include the knowing and intentional fraudulent use of something of value in the name of another person without that person's consent.[2] But not all identity theft is actionable under the New York law. The law authorizes a civil action only if the identity theft "resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided." N.Y. Gen. Bus. L. § 380-l.[3]

---

[2] Section 380-s provides in full: "No person, firm, partnership, corporation, or association or employee thereof shall knowingly and with the intent to defraud, obtain, possess, transfer, use, or attempt to obtain, possess, transfer, or use credit, goods, services or anything else of value in the name of another person without his or her consent." N.Y. Gen. Bus. L. § 380-s.

[3] Section 380-l provides in relevant part: "Any person, firm, partnership, corporation, or association whose knowing and willful violation of [§ 380-s] resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided, and any consumer reporting agency or user of information who or which willfully and knowingly fails to comply with any requirement imposed under this article with respect to any consumer is liable to that consumer" as specified in the statute. N.Y. Gen. Bus. L. § 380-l.

According to Galper's complaint, the bounced checks, the closed accounts, and the government investigation and prosecution of her resulted in adverse reports being made to certain consumer reporting agencies. The complaint does not specify who transmitted these adverse reports to the consumer reporting agencies. Instead, it alleges that the consumer reporting agencies that received adverse information about Galper in turn provided that information to various financial institutions. Galper was harmed when these financial institutions— including Chase—then caused legitimate accounts that Galper controlled to be closed and prevented her from opening new accounts.

Chase removed Galper's action from New York state court to federal court and then moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), contending in part that the federal FCRA preempted Galper's claims for identity theft under the New York law. The district court agreed and granted Chase's motion. *See Galper v. JP Morgan Chase, N.A.*, No. 13 CIV. 3449, 2014 WL 1089061 (S.D.N.Y. Mar. 17, 2014). This timely appeal followed.

## DISCUSSION

We begin with an overview of the preemption principles that guide our consideration of Galper's appeal. The Constitution's Supremacy Clause provides

that "the Laws of the United States . . . shall be the supreme Law of the Land . . .

any Thing in the Constitution or Laws of any State to the Contrary

notwithstanding." U.S. Const. art. VI, cl. 2. It follows that Congress may preempt

(or invalidate) a state law by means of a federal statute. It may preempt state law

expressly or it may preempt state law implicitly in circumstances where it is clear

that Congress intended to occupy the entire regulatory field, where state law

stands as an obstacle to the objectives of Congress, or where compliance with

both federal and state law is impossible. *See Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct.

1591, 1595 (2015); *Madden v. Midland Funding, LLC,* 786 F.3d 246, 249 (2d Cir.

2015).

For any preemption inquiry, the ultimate touchstone for our analysis is the

intent of Congress. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009). And in cases such

as this one that involve a claim of express preemption, we focus on the plain

wording of the statute, which is necessarily the best evidence of the scope of

Congress's preemptive intent. *See Chamber of Commerce of United States v. Whiting*,

131 S. Ct. 1968, 1977 (2011). The structure and purpose of the federal statute is

also a guide to Congress's intent. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S.

133, 138 (1990).

We review *de novo* the district court's application of preemption principles. *See Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 408 (2d Cir. 2013). We are also mindful of the procedural context in which we conduct this preemption inquiry. When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court (as well as this Court) is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009); *Tsirelman v. Daines*, 794 F.3d 310, 312 (2d Cir. 2015).

It follows that when considering a preemption argument in the context of a motion to dismiss, the factual allegations relevant to preemption must be viewed in the light most favorable to the plaintiff. A district court may find a claim preempted only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted. *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 188-89 (4th Cir. 2002); *cf. King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002) (construing facts in light most favorable to non-moving party in preemption context for purposes of motion for judgment on the pleadings pursuant to Rule 12(c)).

9

With these general principles in mind, we now turn to the particular

preemption argument raised in this case. The preemption provisions at issue

here are part of the federal FCRA, a complex statute passed by Congress "to

ensure fair and accurate credit reporting, promote efficiency in the banking

system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47,

52 (2007). The FCRA was enacted in 1970 amidst concerns about the accuracy of

information disseminated by credit reporting agencies (known in the Act as

"consumer reporting agencies"). *See* 15 U.S.C. § 1681. Congress's purpose was

"to require that consumer reporting agencies adopt reasonable procedures for

meeting the needs of commerce for consumer credit, personnel, insurance, and

other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, accuracy, relevancy, and proper utilization of such

information" in accordance with law. *Id.* § 1681(b). Over the years, the FCRA has

been subject to multiple amendments, including to impose regulatory

requirements on actors other than consumer reporting agencies and also to help

consumers and businesses combat identity theft.[4] Significantly, the FCRA itself

---

[4] *See* Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* 2–3 (July 2011),
https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf (summarizing history of amendments to FCRA). In 2003, the FCRA was amended to require that consumer reporting agencies create "fraud alerts"

does not create a federal cause of action for victims against perpetrators of

identity theft.

As relevant to this case, the FCRA's applicable preemption provisions are

somewhat intricate and require consideration of multiple cross-referencing

statutory provisions. To begin with, Congress set forth a general rule that it did

not wish the FCRA to preempt state laws concerning identity theft unless they

were inconsistent with the FCRA. Thus, the FCRA provides in relevant part that

it does "not annul, alter, affect, or exempt any person . . . from complying with

the laws of any State with respect to . . . the prevention or mitigation of identity

theft, except to the extent that those laws are inconsistent with any provision of

[the Act], and then only to the extent of the inconsistency." 15 U.S.C. § 1681t(a).

Congress, however, provided for certain exceptions to this general rule. *See*

15 U.S.C. § 1681t(b) (listing multiple exceptions). One of these exceptions

provides in relevant part as follows: "No requirement or prohibition may be

imposed under the laws of any State—(1) with respect to any subject matter

regulated under— . . . (F) section 1681s-2 of this title, relating to the

---

when a consumer notifies them that he or she has been or is about to become a victim of identity theft. *See* Jeffrey Taft & Christine Poulon, *The Fact Act: The Latest Attempts at Overhauling the Fair Credit Reporting Act and the Fairness and Accuracy of Consumer Reports*, 121 Banking L.J. 194, 195-97 (2004). The amendments also require consumer reporting agencies to refrain from reporting information that resulted from an alleged identity theft if the consumer provides certain documentation indicating that transactions were the product of identity theft. *Id.* at 198.

responsibilities of persons who furnish information to consumer reporting

agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F).[5]

Section 1681s-2, in turn, details specific responsibilities and duties that are

imposed on furnishers of information to consumer reporting agencies, including

that "[a] person shall not furnish any information relating to a consumer to any

consumer reporting agency if the person knows or has reasonable cause to

believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). In

addition, § 1681s-2(a)(6) imposes duties on furnishers who receive notice of

identity-theft related information, such as the duty to have reasonable

procedures in place to respond to a notice of identity theft. *See also Longman v.

Wachovia Bank, N.A.*, 702 F.3d 148, 150-51 (2d Cir. 2012) (*per curiam*) (discussing

scope of § 1681s-2); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir.

2010) (discussing enactment and purpose of § 1681s-2 to regulate duties of

furnishers). Violations of these provisions under 15 U.S.C. § 1681s-2(a)—

prohibiting a furnisher from reporting inaccurate information to a consumer

report agency and requiring protective procedures for responding to notices of

---

[5] Also, the FCRA separately preempts state laws with respect to the conduct required of furnishers under § 1681s-2(a)(6) upon receipt of notice of identity theft related information. *See* 15 U.S.C. § 1681t(b)(5)(H). There is no claim that this separate preemption provision applies to the New York statutes at issue in this case.

identity theft—are not enforceable by means of a federal or state cause of action for damages. *See Longman*, 702 F.3d at 151 (citing 15 U.S.C. §§ 1681s-2(a)(1) & 1681s-2(d)).[6]

Chase does not contend that the New York law is inconsistent with the FCRA, such that it is preempted by the FCRA's general provision that preserves state identity theft laws to the extent that they are not inconsistent with the FCRA. *See* 15 U.S.C. § 1681t(a). Instead, Chase more narrowly contends—and the district court agreed—that plaintiff's claims under the New York law fall within the scope of the express exception to non-preemption that is set forth in § 1681t(b)(1)(F).

We do not think that the federal preemption provision supports this broad contention. As with any preemption provision, we construe § 1681t(b)(1)(F) fairly but narrowly, mindful in the appropriate case that "each phrase within [the provision] limits the universe of [state action] pre-empted by the statute." *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 551 (2001) (alterations in original) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 524 (1992)). Here, the language of the provision expresses Congress's intent to preempt claims which

---

[6] By contrast, the FCRA does allow for private civil causes of action against furnishers under limited circumstances that are not present in this case, such as when a furnisher willfully or negligently fails to correct a credit reporting error after receiving notice of a dispute from a consumer reporting agency. *See* 15 U.S.C. §§ 1681n, 1681o, 1681s-2(b)–(d).

are "with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). This provision, therefore, must be read to preempt *only* those claims against furnishers that are "with respect to" the subject matter regulated under § 1681s-2.

What does the phrase "with respect to" mean in this context? In a recent case involving the preemptive scope of a provision in the Federal Aviation Administration Authorization Act ("FAAAA"), the Supreme Court suggested that a claim is "with respect to" a preempted subject matter when it concerns that subject matter. *See Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1778-79 (2013) (stating that FAAAA provision preempting state laws "with respect to [a motor carrier's] transportation of property" preempts those laws that "concern a motor carrier's 'transportation of property'" (quoting 49 U.S.C. § 14501(c)(1))). While the preemption provision at issue here arises in a different federal statute, "we discern no basis for concluding that the meaning of the language in each provision was not intended to be the same." *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 157 (2d Cir. 2010) (finding that the phrase "relate[s] to" had the same meaning when used in separate preemption provisions).

14

Accordingly, we hold that § 1681t(b)(1)(F) preempts only those claims that *concern* a furnisher's responsibilities. Put differently, § 1681t(b)(1)(F) does not preempt state law claims against a defendant who happens to be a furnisher of information to a consumer reporting agency within the meaning of the FCRA if the claims against the defendant do not also concern that defendant's legal responsibilities as a furnisher of information under the FCRA.

The question, then, is this: do Galper's claims against Chase concern Chase's responsibilities as a furnisher of information under the FCRA? We conclude that, when viewed in the light most favorable to Galper, the complaint plausibly alleges identity theft claims that do not concern Chase's responsibilities as a furnisher. Instead, the complaint advances a theory that Chase is vicariously liable—presumably under a *respondeat superior* theory—for the identity theft allegedly perpetrated by its employees. *See* Compl. ¶ 5 (alleging that "[i]n participating in, aiding, abetting, and facilitating the Money Laundering Scheme . . . [the] Chase employees acted within the scope of their employment and for the benefit and profit of Chase," and that Chase is therefore "liable for the theft of Galper's identity perpetrated by" its employees).[7]

---

[7] Under New York law, "[t]he doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment. Pursuant to this doctrine, the

And this theft could be actionable under the New York statute because it eventually resulted in an alert by someone to consumer reporting agencies. The New York law requires only that the theft have "*resulted* in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided." N.Y. Gen. Bus. L. § 380-l (emphasis added). There is scant case law interpreting the New York law, but—as we understand the wording of the statute—it does not matter if the defendant who is sued for identity theft is also the furnisher of information to a consumer reporting agency.

Indeed, Galper's complaint does not specify who eventually reported adverse information about Galper to consumer reporting agencies. Whether it was Chase—or government investigators or another bank or some other person or entity—that eventually reported the adverse information to consumer reporting agencies is irrelevant because the law requires only that the theft have resulted in the transmission of the information by someone to a consumer reporting agency. Nor does the New York law require any showing that the

---

employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 808 N.E.2d 1263, 1265-66 (2004) (internal quotation marks omitted). Because neither party argues otherwise, we assume (without deciding) that, as a matter of New York state law, Chase could be held vicariously liable under a *respondeat superior* theory for its employees' theft of Galper's identity.

16

transmission of information to a consumer reporting agency was proper or improper, and Galper's complaint does not make any explicit allegations concerning the propriety or impropriety of the transmission here.

In short, Chase could face vicarious liability under the New York law for its *employees' theft* of Galper's identity, not for any later act by Chase or anyone else—proper or improper—of *reporting* adverse information about Galper to a consumer reporting agency. Under this theory of the complaint, it cannot be said that all of Galper's claims against Chase concern or are "with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F).

We are not persuaded by Chase's argument that § 1681t(b)(1)(F) preempts all claims "relating to the responsibilities" of furnishers in any way, and regardless of the capacity in which the furnisher is acting. This broad argument overlooks the language of the statute. In this statutory context, the phrase "relating to" is not used to describe the scope of preemption. Instead, the phrase exists as a shorthand reference to describe the subject matter governed by

§ 1681s-2.[8] If Congress had intended to preempt claims that relate in any way to someone furnishing information to a consumer reporting agency, it could easily have drafted the statute to say that state laws "relating to the furnishing of information to consumer reporting agencies are preempted."

But this it did not do. Congress opted instead to use language that focuses more narrowly on the preemption of laws that regulate the *responsibilities* of persons who furnish information to consumer reporting agencies. *Cf. Macpherson v. JP Morgan Chase Bank, N.A.*, 665 F.3d 45, 47–48 (2d Cir. 2011) (*per curiam*) (concluding that § 1681t(b)(1)(F) preempted state common law claims for defamation and intentional infliction of emotional distress that were based on allegations that the defendant willfully and maliciously provided false information about plaintiff's finances to a consumer reporting agency).

Although we do not find the text of § 1681t(b)(1)(F) to be ambiguous, we

---

[8] For this reason, our decision is not inconsistent with the methodological approach we took in *Metropolitan Taxicab Board of Trade v. City of New York*, 615 F.3d 152 (2d Cir. 2010), a decision upon which the district court here relied. The preemption provision at issue in that case was very broad—preempting any state laws that were "related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard" under federal law. *Id.* at 156 (quoting the Energy Policy and Conservation Act, 49 U.S.C. § 32919(a)). We concluded there that the breadth of "relating to" preemption under the Energy Policy and Conservation Act was akin to the broad scope applied in cases arising under the Employee Retirement Income Security Act ("ERISA") and that preemption was triggered by no more than a showing that "the challenged law contains a 'reference' to the preempted subject matter or makes the existence of the preempted subject matter 'essential to the law's operation.'" *Id.* (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324–25 (1997)). For the reasons discussed above, the preemptive scope of § 1681t(b)(1)(F) is narrower than the broad form of "relating to" preemption that applies for ERISA and other similar statutes.

would interpret the statute in the same manner if it were. That is "[b]ecause the States are independent sovereigns in our federal system," and we "assum[e] that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2188 (2014) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). "In our federal system, there is no question that States possess the traditional authority to provide tort remedies to their citizens as they see fit." *Id.* at 2189 (quoting *Wos v. E.M.A.*, 133 S. Ct. 1391, 1400 (2013)).

It follows—as the Supreme Court has made clear—that "we 'presume federal statutes do not . . . preempt state law.'" *Eades v. Kennedy, PC Law Offices*, No. 14-104-cv, 2015 WL 3498784, at *6 (2d Cir. June 4, 2015) (quoting *Bond v. United States*, 134 S. Ct. 2077, 2088 (2014)). This means that "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." *CTS Corp.*, 134 S. Ct. at 2188 (quoting *Altria Grp., Inc. v. Good,* 555 U.S. 70, 77 (2008)). And so we do here.

Our interpretation also avoids consequences that Congress could not plausibly have intended. Suppose, for example, that professional identity thieves had fraudulently opened accounts in Galper's name at an unwitting bank and

that, once the bank learned of checks bouncing and other irregularities with the

account, the bank reported these irregularities to a credit reporting agency.

Under the district court's broad interpretation of the preemptive scope of the

FCRA, Galper could not sue the professional identity thieves under the New

York law; her state law remedy against the thieves would be preempted by the

FCRA solely because her cause of action depended upon a showing that some

third party like a bank eventually transmitted information to a consumer

reporting agency. That is contrary to what Congress plausibly intended when it

sought to preserve state law remedies for identity theft. Nor is there any

indication that Congress would have intended that the result be any different

where a victim of identity theft seeks to hold an employer vicariously liable for

its employees' identity theft.

All that said, we do not conclude that § 1681t(b)(1)(F) is altogether

inapplicable to this case in view of the somewhat confusing nature of the

complaint. While the theory of liability we have set forth above strikes us as the

most natural reading of Galper's complaint, there are other possible

interpretations. After all, the paragraphs of the complaint setting forth the

identity theft claims (¶¶ 29-36) do not actually mention the concept of vicarious

liability or *respondeat superior*, and they could arguably be read to include the theory that Chase is liable for damages (at least in part) because it furnished false information. To the extent that such claims would even be viable under the New York law, they are preempted under the FCRA because they plainly concern Chase's legal responsibilities as a furnisher.

And in her "prayer for relief," Galper seeks punitive damages to "punish Chase for its wanton, reckless, and malicious acts." Compl., Prayer for Relief ¶ B. Galper cannot base any punitive damages recovery on wrongdoing that Chase may have committed when furnishing information to consumer reporting agencies. This is so because § 1681t(b)(1)(F) preempts any recovery for damages based on allegations of erroneous or otherwise improper furnishing—regardless of the particular statute or common law theory that plaintiff utilizes to advance her claim. *See Macpherson*, 665 F.3d at 47-48.

## CONCLUSION

To summarize: we hold that 15 U.S.C. § 1681t(b)(1)(F) preempts only those claims that concern a defendant's responsibilities as a furnisher of information under the FCRA. Viewed in the light most favorable to Galper, the complaint advances claims against Chase for identity theft under N.Y. Gen. Bus. L. §§ 380-l

and 380-s based on acts of identity theft perpetrated by Chase employees, as distinct from any erroneous or otherwise wrongful actions by Chase in furnishing information to consumer reporting agencies. These identity theft claims are not preempted because they do not concern Chase's responsibilities as a furnisher. To the extent that Galper's complaint seeks relief based on Chase's erroneous or otherwise improper furnishing of information to consumer reporting agencies, those claims are preempted.

The district court's judgment is VACATED and this case is REMANDED for further proceedings consistent with this decision.